**2021 IL 126008**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 126008)

PALOS COMMUNITY HOSPITAL, Appellant, v. HUMANA
INSURANCE COMPANY, INC., Appellee.

*Opinion filed May 20, 2021.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Michael J. Burke,
Overstreet, and Carter concurred in the judgment and opinion.

Justice Neville took no part in the decision.

## OPINION

¶ 1    At issue is whether the "test the waters" doctrine constitutes a valid basis on
which to deny a party's motion for substitution of judge as of right under section 2-
1001(a)(2) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1001(a)(2) (West
2016)). We conclude that the doctrine conflicts with the plain language of the

statute. Therefore, we reverse the appellate court's judgment.

¶ 2                                      BACKGROUND

¶ 3        Palos Community Hospital (Palos) is a not-for-profit community hospital located in Palos Heights, Illinois. Humana Insurance Company, Inc.[1] (Humana), insures and administers health insurance plans for millions of people located throughout the United States, including the greater Chicagoland area. In June 2013, Palos filed its initial complaint in Cook County circuit court for fraud, breach of contract, and other relief against Humana and other entities. In December 2013, Palos filed an amended complaint for fraud, breach of contract, and other relief against Humana and two other defendants. The other defendants ultimately settled with Palos before trial.

¶ 4        According to Palos, Humana underpaid for medical services that Palos provided to members of its health insurance plans, including its preferred provider organization (PPO) plan. Palos alleged that, to induce it to provide discounted PPO rates, Humana represented that its members would seek services from Palos in sufficient numbers to justify the discounted rates. Palos alleged that Humana made these representations in bad faith and instead reimbursed it at materially lower rates than agreed to by the parties. As a direct result of Humana's conduct, Palos alleged that it sustained roughly $20 million in damages. In January 2014, Humana moved to dismiss the amended complaint under section 2-619.1 of the Code (*id* § 2-619). Humana argued that Palos failed to state a claim for either common-law or constructive fraud because its complaint did not satisfy the strict requirements for pleading fraud. It further contended that Palos's breach of contract claim was time-barred.

¶ 5        Judge Sanjay Tailor initially presided over the action. In April 2014, the trial court granted Humana's motion to dismiss the complaint with prejudice. Palos moved the court to reconsider its dismissal of the claims against Humana. In early

---

[1]In the trial court, Palos filed suit against Humana, Inc.; Humana Insurance Company, Inc.; and Humana Health Plan. However, Palos appealed only regarding the claim against Humana Insurance Company, Inc.

July 2014, the trial court partially granted Palos's motion to reconsider. As relevant here, the court reinstated Palos's claim for breach of contract.

¶ 6      Over the next two years, the parties filed numerous motions to compel and other "emergency" discovery motions. Accordingly, on his own motion, in October 2016 Judge Tailor entered an order appointing retired judge James Sullivan to serve as a discovery master. The trial court ordered the parties to confer with Judge Sullivan on all pending discovery disputes. The court asked Judge Sullivan to attempt to mediate the disputes. If the parties ultimately were unable to resolve them, the court ordered Judge Sullivan to prepare and submit a report and recommendation on the outstanding discovery issues, with a copy to the parties. The trial court permitted the parties to file objections within seven days of receiving the report and recommendation.

¶ 7      On March 20, 2017, Judge Sullivan sent a letter with certain recommendations to Judge Tailor. He recommended that "the court order Palos to produce the documents and data that reflect the rates that Palos expected to be paid by Humana," including "the rate sheets from 1989 through 2004 and other related documents and data from 1989 through 2010." Judge Sullivan sent a copy of his letter to all counsel of record. At a status hearing the next day, Judge Diane Shelley began presiding over the case. Palos clarified that Humana was the main defendant and that a single count for breach of contract remained against the company.

¶ 8      Palos also explained that Judge Tailor had ordered the parties to engage in mediation with Judge Sullivan and that his recommendation letter is what they intended to address at the hearing. Noting that Judge Tailor had established a procedure for the parties to object to the report and recommendation, Palos requested leave of court to file an objection. Additionally, Palos contended that the trial court lacked authority to appoint a special master or mediator to oversee discovery. Judge Shelley granted Palos's request to submit the filings, noting that she would keep "a very open mind." At the same time, the trial court saw no "need to deviate from the procedure that Judge Tailor had already established in the case" and would likely "continue to follow it," unless the parties presented "something new" to the court.

¶ 9      In early April 2017, Palos filed a memorandum in support of its motion to strike the discovery master. It also filed an objection to the content of Judge Sullivan's

report. On April 13, 2017, the trial court conducted a hearing on Palos's motion to strike. Palos noted that its motion to strike was "intimately tied in with Palos's objection to his report that he submitted to the court." In its view, there was "a fundamental jurisdictional issue with the appointment of Judge Sullivan." Palos also observed that, if the trial court agreed with its analysis, "the merits of the other briefing [did not] need to be addressed."

¶ 10 The trial court noted that the prior judge "made a determination that he needed the assistance of Judge Sullivan in trying to resolve the discovery issues in this case." And though the court would not "mak[e] an announcement at this juncture," it observed that there was "precedent for a judicial officer to seek assistance in matters of this nature." In response, Palos noted that it had "spent a lot of time researching this issue" and opined that it had "found all the pertinent authority out there." After pledging to review the cases cited in its motion, the trial court concluded the hearing.

¶ 11 On April 20, 2017, citing section 2-1001(a)(2) of the Code, Palos moved for substitution of judge as a matter of right. Under that section, "[w]hen a party timely exercises his or her right to a substitution without cause as provided in this paragraph (2)," "[e]ach party shall be entitled to one substitution of judge without cause as a matter of right." 735 ILCS 5/2-1001(a)(2)(i) (West 2016). In relevant part, the statute further provides that "[a]n application for substitution of judge as of right shall be made by motion and shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." *Id.* § 2/1001(a)(2)(ii). Palos observed that the trial court had not made any substantial ruling and that neither a trial nor hearing had been conducted in the action. Therefore, Palos asked the court to grant its motion.

¶ 12 On May 4, 2017, the trial court conducted a hearing on Palos's motion for substitution of judge. The court observed that "these motions are usually liberally granted, except when the parties have had an opportunity to test the waters." The court noted that, at both prior hearings, it affirmed that precedent existed for the appointment of a discovery master. Palos's motion for substitution of judge followed shortly thereafter. Noting that counsel had an obligation to advocate for and strategize on behalf of their clients, the trial court assured Palos that it did not take offense at the substitution motion. Nonetheless, the court found that testing the

waters "remain[ed] an exception to the substitution of judge motion in the First District."

¶ 13    In a written order entered the same day, the trial court denied Palos's motion for substitution of judge as a matter of right. The trial court noted that a "substitution of judge may be had when a party timely exercises the right to a substitution." However, the trial court asserted that such a motion "is considered untimely when the party moving for a substitution of judge has discussed issues with the judge, who has indicated a position on a particular point." Even if no actual ruling was issued, the trial court stated that a substitution motion can be denied when the party "had an opportunity to test the waters and form an opinion as to the court's disposition of an issue." The court found that testing the waters was an exception to motions for substitution of judge as of right, and it concluded that this was "clearly a case where the movant tested the waters and determined that the court may be reluctant to strike the discovery master and his report which recommended that certain contentious documents be produced." Thus, the court ruled that Palos's motion was untimely.

¶ 14    On May 16, 2017, Palos moved the trial court to reconsider its denial of the motion for substitution of judge. Alternatively, it asked the court to certify the issue for immediate appeal under Illinois Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. Jan. 1, 2016)). Palos noted that, if there was no immediate appeal and a reviewing court later determined that the motion should have been granted, all proceedings after the erroneous denial would be void. The trial court denied Palos's motion for reconsideration and its request for an immediate appeal.

¶ 15    Discovery proceeded. In January 2018, Humana moved for discovery sanctions on the ground that Palos had spoiled evidence. According to Humana, during the pendency of the litigation—and after Humana had already served its discovery requests—Palos intentionally concealed material evidence from Humana, intentionally deleted highly relevant evidence critical to the issues in the case, and then intentionally concealed that it had deleted the evidence while under a clear duty to preserve it. In part, Humana asked the trial court to issue an adverse inference against Palos, finding that the materials Palos destroyed would have shown that Palos instructed a third-party auditor to measure reimbursement payments under the initial contract. Humana also asked the court to sanction Palos

and its attorneys, requiring them to reimburse Humana for the fees and costs incurred while attempting to recover the deleted evidence. In response, Palos claimed that the destroyed materials were merely duplicates of material that it had already produced.

¶ 16 The trial court entered its order on the motions for discovery sanctions and spoliation in April 2018. The court noted that, despite Humana's request that such entities be identified, Palos did not disclose the existence of its consulting contract with the third-party auditor, the nature of its services, or its request that the consultant destroy records. The court emphasized that at no time did Palos reveal that it was directing an undisclosed consultant to destroy data during the pendency of motions to compel the production of information. In accordance with Illinois Supreme Court Rule 219(c) (Ill. S. Ct. R. 219(c) (eff. July 1, 2002)), the trial court found that Humana was entitled to compensation for the time it spent uncovering the wrongdoing and evaluating the nature and extent of the loss of such data. Thus, the court granted Humana's motions for discovery sanctions and spoliation against Palos.

¶ 17 In early June 2018, on the parties' cross-motions for summary judgment, the trial court determined that the relevant contractual language was ambiguous and that the claims and defenses could not be resolved as a matter of law. Therefore, the court denied the motions. At the close of trial, on June 18, 2018, the jury found in favor of Humana and against Palos.

¶ 18 Among other posttrial motions, Palos filed a motion challenging the court's denial of its request for substitution of judge. The trial court observed that at the hearings on March 21, 2017, and April 13, 2017, "substantive discovery issues were discussed at length along with the discovery master's recommendations." The court reiterated its conclusion that Palos had tested the waters. It therefore denied the posttrial motion. On March 28, 2019, Palos filed a notice of appeal. In relevant part, it sought reversal of the trial court's order of May 4, 2017, denying its motion for substitution of judge as of right.

¶ 19 The appellate court affirmed the trial court's rulings. The court observed that, when a motion for substitution of judge as of right is "properly made, the right is absolute, and the trial court has no discretion to deny" it. 2020 IL App (1st) 190633, ¶ 22. "However, to discourage 'judge shopping,' " the appellate court asserted that

- 6 -

"a motion for substitution of judge must be filed at the earliest practical moment before commencement of trial or hearing and before the trial judge considering the motion rules upon a substantial issue in the case." (Internal quotation marks omitted.) *Id.* ¶ 23. "Even if the judge did not rule on a substantive issue," the appellate court determined that "the substitution motion may be denied if the party has tested the waters and formed an opinion as to the judge's reaction to his or her claim." *Id.*

¶ 20 Here, the appellate court found that the trial court properly denied Palos's motion for substitution of judge. *Id.* ¶ 29. In response to Palos's arguments on the requests to strike the discovery master at the March 21 and April 13 hearings, Judge Shelley stated that she believed there was precedent for such an appointment. *Id.* The appellate court concluded that the trial court's reluctance to strike the discovery master implied that the court would accept his report, which " 'recommended that certain contentious documents be produced.' " *Id.* Thus, the appellate court found that "Palos had tested the waters because it could discern Judge Shelley's position on the production of documents at the heart of this controversy." (Internal quotation marks omitted). *Id.*

¶ 21 We allowed Palos's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019).

¶ 22                                                    ANALYSIS

¶ 23 The question before this court is whether the test the waters doctrine is a valid basis on which to deny a motion for substitution of judge as a matter of right, given the language of section 2-1001(a)(2) of the Code.

¶ 24 Statutory construction presents a question of law that we review *de novo*. *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 22. A court's primary objective when construing a statute is to ascertain and give effect to the legislature's intent. *Oswald v. Hamer*, 2018 IL 122203, ¶ 10. All other rules of statutory construction are subordinate to this cardinal principle. *Id.* The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Special Prosecutor*, 2019 IL 122949, ¶ 23. When the language is clear and unambiguous, we must give effect to the statute as written without

- 7 -

resort to further aids of statutory construction. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008).

¶ 25 Under section 2-1001(a)(2), a party's motion for substitution as a matter of right in a civil action "shall be granted if it is presented before trial or hearing begins *and* before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties." (Emphasis added.) 735 ILCS 5/2-1001(a)(2)(ii) (West 2016). When a party timely exercises his or her right to a substitution without cause "as provided in this paragraph (2)"—for instance, when the motion is filed before trial begins and before the judge has ruled on any substantial issue—the party "shall be entitled to one substitution of judge without cause as a matter of right." *Id.* § 2-1001(a)(2)(i). When properly made, a motion for substitution of judge as of right is absolute; the trial court has no discretion to deny it. *Bowman v. Ottney*, 2015 IL 119000, ¶ 17.

¶ 26 As this court observed in *Bowman*, "[t]he version of section 2-1001 that is currently in effect was adopted in 1993, when the General Assembly rewrote the statute." *Id.* ¶ 14. With the 1993 amendment, the General Assembly eliminated the requirement that a party seeking substitution must allege bias or prejudice on the part of the judge. *Id.* ¶ 16. "Under the new provision, a litigant is entitled to one substitution without cause as a matter of right, as long as the request for substitution is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." (Internal quotation marks omitted.) *Id.*

¶ 27 In *Bowman*, we mentioned the appellate court's reliance on the test the waters doctrine, which "permits the denial of an initial motion for substitution of judge before substantial rulings have been made, if the party presenting the motion has been able to form an opinion as to the court's disposition toward his or her case." *Id.* ¶ 5. However, in that case, the trial court had ruled on substantial issues before the defendant moved for substitution as of right. The test the waters doctrine was therefore inapplicable, and this court did not need to address its validity. *Id.* ¶ 27.

¶ 28 We do so now, and we hold that the test the waters doctrine is incompatible with the plain language of section 2-1001(a)(2). As the statutory text makes clear, so long as a party files its substitution motion before certain, specified occurrences, the party is "entitled to one substitution of judge without cause as a matter of right."

735 ILCS 5/2-1001(a)(2)(i) (West 2016). In part, the statute provides that a motion for substitution of judge as of right shall be granted if the motion is presented both before the trial or hearing begins and before the judge to whom the motion is presented has ruled on any substantial issue in the case. *Id.* § 2-1001(a)(2)(ii). A party having "been able to form an opinion as to the court's disposition toward his or her case" is not among the criteria listed in the statute. Thus, the test the waters doctrine is an improper basis on which to deny a motion for substitution of judge as of right.

¶ 29    Here, Palos moved for substitution of judge as a matter of right before trial or hearing[2] began and before Judge Shelley had ruled on any substantial issue in the case. Palos's motion followed the requirements set forth in section 2-1001(a)(2). Therefore, the trial court erred in denying it. See *Bowman*, 2015 IL 119000, ¶ 17.

¶ 30    Relying on cases that this court decided long before the statute was amended in 1993, Humana argues that a motion for substitution of judge must be "timely" filed, which, it believes, means that the motion must be filed before a party has tested the waters. See, *e.g.*, *People v. Lawrence*, 29 Ill. 2d 426, 427-28 (1963) ("[P]etitions delayed until after the trial judge has by his rulings passed upon substantive issues, and indicated his views on the merits of the cause, come too late."); *Commissioners of Drainage District No. 1 v. Goembel*, 383 Ill. 323, 328 (1943) ("It would be highly improper to permit an attorney *** to try out the attitude of the trial judge on a hearing as to part of the questions presented and, if his judgment on such questions was not in harmony with counsel's view, to then permit counsel to assert that the court was prejudiced and that a change of venue must be allowed."). Yet, the only timeliness requirements in the currently operative version of the statute are those contained "in this paragraph (2)," namely, that the motion "shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case." 735 ILCS 5/2-1001(a)(2)(ii) (West 2016). If, as here, a motion for substitution of judge as of right is filed before trial or hearing begins and before the judge has ruled on a substantial issue in the case, it is timely. Given the language of the operative provisions for substitution of judge

---

[2]Humana did not argue that the April 13, 2017, hearing on Palos's motion to strike the discovery master should be considered a disqualifying hearing for purposes of section 2-1001(a)(2)(ii). Accordingly, we decline to address the issue.

as of right, older decisions such as *Lawrence* and *Goembel* that allude to the test the waters doctrine should no longer be relied upon on as to that issue.

¶ 31 Humana urges this court to uphold the test the waters doctrine, claiming that it furthers the statute's purposes. However, as we have repeatedly observed, "[c]ourts are not at liberty to depart from the plain language and meaning of a statute by reading into it exceptions, limitations, or conditions the legislature did not express." *In re Hernandez*, 2020 IL 124661, ¶ 18. The General Assembly did not include the test the waters doctrine in the language of the statute when it amended section 2-1001(a)(2), and we are not free to read it in.

¶ 32 Humana also draws our attention to "protective measures" that other states have implemented to "constrain testing the waters" by litigants. For instance, Humana notes that in New Mexico a party seeking to disqualify a judge must file an "affidavit of disqualification *** within ten days after the cause is at issue or within ten days after the time for filing a demand for jury trial has expired, or within ten days after the judge sought to be disqualified is assigned to the case, whichever is the later." N.M. Stat. Ann. § 38-3-10 (2016). Humana further observes that in Minnesota a party cannot request the removal of a judge "who has presided at a motion or any other proceeding of which the party had notice." Minn. R. Civ. P. 63.03 (eff. July 1, 2018). These provisions from other states only accentuate the fact that the General Assembly chose *not* to include similar measures in section 2-1001(a)(2).

¶ 33 Indeed, the General Assembly made a different choice regarding the criminal substitution of judge statute, which, in part, provides: "Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge ***." 725 ILCS 5/114-5(a) (West 2016). The legislature knows how to include explicit timing requirements into a statute when that is its intent. The General Assembly's decision not to include such language in section 2-1001(a)(2) demonstrates that it did not intend for the statute to contain that type of "protective measure." See *Whitaker v. Wedbush Securities*, 2020 IL 124792, ¶ 16 ("The most reliable indicator of legislative intent is the statutory language ***.").

¶ 34 As to what follows when a trial court improperly denies a motion for substitution of judge as of right, under the preamendment version of the statute, we

observed that when a motion for substitution of judge "is timely filed and in proper form, it must be granted and any order entered after its presentation is a nullity." *In re Dominique F.*, 145 Ill. 2d 311, 324 (1991); see also *Chavis v. Woodworker's Shop, Inc.*, 2018 IL App (3d) 170729, ¶ 15 ("Any order entered subsequent to the time that a motion for substitution of judge should have been granted becomes a nullity."). We reasoned that a trial judge should not be allowed "to circumvent rules of law by postponing a decision on a [motion for substitution of judge] until after he has ruled on the substantive issues in the case." *In re Dominique F.*, 145 Ill. 2d at 324. Moreover, because the legislature has established a statutory right to substitution of judge without cause so long as certain criteria are met, courts are obligated to uphold that right. See, *e.g.*, *Williams v. Leonard*, 2017 IL App (1st) 172045, ¶ 9 ("[W]hen properly made, a motion for substitution of judge as a matter of right is absolute, and the circuit court has no discretion to deny the motion." (Internal quotation marks omitted.)). We therefore hold that every order entered by the trial court after April 20, 2017, when Palos filed its substitution motion, must be vacated.

¶ 35    We acknowledge that a primary concern underlying the test the waters doctrine is that litigants would strategically time the filing of their motions for substitution of judge as of right as a form of gamesmanship. See, *e.g.*, *Bowman*, 2015 IL 119000, ¶ 18 ("[T]his court has long recognized that courts may take into consideration the circumstances surrounding a motion for substitution of judge and may deny the motion if it is apparent that the request has been made as a delay tactic."); see *id.* ¶ 25 (observing that section 2-1001 is designed to prevent "procedural maneuvering"). However, the test the waters doctrine is far from the only tool available to the trial judge to protect the integrity of the court. Settled law recognizes that trial courts possess "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Dietz v. Bouldin*, 579 U.S. ___, ___, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Even without the test the waters doctrine, the trial court may rely on its inherent authority to enter any orders necessary to prevent abuse or manipulation of the system. See, *e.g.*, *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 66 (1995) ("The recognition of the court's inherent authority is necessary to prevent undue delays in the disposition of cases caused by abuses of procedural

rules, and also to empower courts to control their dockets.").

¶ 36                                    CONCLUSION

¶ 37        In sum, we hold that the test the waters doctrine is incompatible with the text of section 2-1001(a)(2). We further hold that the trial court erred in denying Palos's motion for substitution of judge as of right because its motion satisfied the statutory criteria. Accordingly, we reverse the appellate court's decision. This action is remanded to the trial court with directions to vacate all orders entered by the court after April 20, 2017, and for further proceedings consistent with this opinion.

¶ 38        Judgments reversed.

¶ 39        Cause remanded with directions.

¶ 40        JUSTICE NEVILLE took no part in the consideration or decision of this case.